IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY D. HILL, | No. CIV S-06-1285-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 22) and defendant's cross-motion for summary judgment (Doc. 26).

/ / /

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Michael J. Astrue is substituted for his predecessor. The Clerk of the Court is directed to update the docket to reflect the above caption.

1

## I.  BACKGROUND

Plaintiff applied for social security benefits in February 2004.  In his application, plaintiff claims that disability began on January 1, 2003.  In a disability report submitted with his application, plaintiff claims his disability consists of a combination of "severe lumbar spine condition with two herniated discs impinging on nerve roots (per MRI) and a severe cervical spine condition."  In his motion for summary judgment, plaintiff adds that he suffers from morbid obesity, asthma, and depression."[2]  Plaintiff is a United States citizen born May 4, 1959, with a high school equivalency and some college courses.

Plaintiff's claim was initially denied.  Following denial of his request for reconsideration, plaintiff requested an administrative hearing, which was held on June 13, 2005, before Administrative Law Judge ("ALJ") Antonio Acevedo-Torres.

In his July 26, 2005, decision, the ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Act on January 1, 2003, the date the claimant stated he became unable to work, and continued to meet them through December 31, 2004;

2. The claimant has not engaged in substantial gainful activity since January 1, 2003;

3. The claimant has severe back pain related to . . . multiple level broad based disc bulges from L1 to S1 without spinal stenosis, neck pain due to degenerative osteoarthritis of the cervical spine, morbid obesity, and right trochanteric bursitis; however, he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4;

4. The claimant's allegation that he is unable to perform all regular, sustained work activity is not supported by the objective evidence of record and is not credible;

5. The claimant has the retained residual functional capacity to . . . lift ten pounds, walk or stand two hours in an eight-hour workday, and sit not more than six hours in an eight-hour workday; he should avoid more than occasional stooping activities and should not work in capacities that require fine balancing on his feet; he has no manipulative limitations;

---

[2]  Plaintiff does not, however, raise any arguments with respect to asthma or depression.

      6.     The claimant is unable to perform his past relevant work as an auto technician/mechanic;

      7.     The claimant is 46 years of age, which is defined as a younger individual;

      8.     The claimant has a high school education;

      9.     In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material;

      10.    Using Medical-Vocational Rule 201.21 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform; considering the claimant's age, educational background, and residual functional capacity, he is able to make a successful vocational adjustment to work which exists in significant numbers in the national economy; pursuant to the testimony of the vocational expert, such work includes: (1) telephone quotation clerk occupations . . . ; (2) document preparer . . . ; and (3) final assembler (optical goods) . . . ; and

      11.    The claimant was not under a disability, as defined in the Social Security Act, at any time through the date of this decision.

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to benefits. After the Appeals Council declined review on April 11, 2006, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v.

1  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

2  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

3  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

4  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

5  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

6  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

7  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

8  Cir. 1988).

## III.  DISCUSSION

11         In his motion for summary judgment, plaintiff argues that the ALJ erred in four

12  ways in determining that he was not disabled.  Specifically, plaintiff argues: (1) the ALJ failed to

13  properly evaluate his obesity; (2) the ALJ failed to properly evaluate the opinions of Drs. Robert

14  Gabbay, D.O., and Kenneth Forsythe, M.D.; (3) the ALJ erred in finding that plaintiff's

15  testimony was not credible; and (4) the ALJ failed to include all of plaintiff's limitations in

16  hypothetical questions posed to the vocational expert.

17      A.  **Plaintiff's Obesity**

18         In 1999, obesity was removed from the Listing of Impairments.  Obesity may still

19  enter into a multiple impairment analysis, but "only by dint of its impact upon the claimant's

20  musculoskeletal, respiratory, or cardiovascular system."  Celaya v. Halter, 332 F.3d 1177, 1181

21  n.1 (9th Cir. 2003).  Thus, as part of his duty to develop the record, the ALJ is required to

22  consider obesity in a multiple impairment analysis, but only where it is "clear from the record

23  that [the plaintiff's] obesity . . . could exacerbate her reported illnesses."  Id. at 1182; see also

24  Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (distinguishing Celaya and concluding that

25  a multiple impairment analysis is not required where "the medical record is silent as to whether

26  and how claimant's obesity might have exacerbated her condition" and "the claimant did not

present any testimony or other evidence . . . that her obesity impaired her ability to work"). Where a multiple impairment analysis is not required, the ALJ properly considers obesity by acknowledging the plaintiff's weight in making determinations throughout the sequential analysis.  See Burch, 400 F.3d at 684.

        A review of the hearing decision reflects the following references to the record concerning plaintiff's obesity:

>  1. The evidence supports a finding that the claimant has severe . . . morbid obesity;
>
>  2. He was being treated for weight management with Wellbutrin and Xenical due to a 100-pound weight gain in the last five years;
>
>  3. Follow-up in February 2004 indicated the claimant . . . was diagnosed with . . . obesity; he was encouraged to lose weight;
>
>  4. In March 2004, the claimant was diagnosed with . . . morbid obesity;
>
>  5. In February 2005 . . . [r]ange of motion of the lumbar spine was decreased, possibly due to morbid obesity more than due to his pain; the claimant was diagnosed with . . . morbid obesity; the claimant was . . . to seriously think about weight loss.

At the hearing, plaintiff never testified that he was disabled or limited due to obesity.  During the ALJ's questioning, plaintiff testified:

> Q: . . . Now, what keeps you from working, sir?
>
> A: Severe low back pain, pain in my neck. I can't sit longer for than about 20 or 30 minutes at a time.  I have to get up and move around or go lay down, usually.  It's hard for me to stand or walk. . . .

As to plaintiff's weight, the hearing transcript reflects the following exchange between plaintiff and the ALJ:

> Q: Well, in this timeframe, 2001 to present, have you had any kind of surgery?
>
> A: No.  They say that my weight issues makes it not a good candidate for surgery.  I have tried losing weight.  I've lost 30 pounds so far.
>
> Q: What's your weight now?

| | | |
|---|---|---|
| 1 | A: | 285. |
| 2 | Q: | And one year ago? |
| 3 | A: | One year ago, about 280. |
| 4 | Q: | Did you follow any kind of diet or no? |
| 5 | A: | Excuse me? |
| 6 | Q: | Did you follow any kind of diet or no? |
| 7 | A: | Yes.  Low fat, low carb, plus they – I was taking Xenical as a fat blocker. |
| 8 | Q: | Since when you follow this diet? |
| 9 | A: | I've been following it about two years. |
| 10 | Q: | Okay.  When you started with this diet two years ago, what was your weight? |
| 11 | A: | Three hundred and fifteen pounds. |

Plaintiff was represented by an attorney at the hearing.  During her questioning of plaintiff, counsel never inquired about plaintiff's weight.  In addition to stating that he had considered plaintiff's obesity along with his other impairments – as plaintiff notes – the ALJ also concluded that plaintiff had failed to meet his burden of proof under 20 C.F.R. §§ 404.1509, 404.1512, 404.1529, 416.909, 416.912, and 416.929 with respect to the effects of obesity.

Plaintiff argues:

> . . . Despite the evidence documenting Mr. Hill's obesity and the exacerbating effects of his obesity on the rest of his health, the ALJ's entire discussion of Mr. Hill's morbid obesity was a cryptic one line notation that his obesity 'has been considered along with his other impairments.' [¶] This summary disposition of Mr. Hill's obesity and its exacerbating effects on his health failed to satisfy even the basic requirements of SSR 02-01p.

Plaintiff concludes that the ALJ failed to ". . . appreciate the significance of Mr. Hill's morbid obesity."  Defendant argues that, when viewing the ALJ's entire opinion, it is clear that he properly considered plaintiff's obesity in concluding that plaintiff retained the functional capacity to perform sedentary work.

The court disagrees with plaintiff that the ALJ's entire discussion of plaintiff's obesity was a "cryptic" one-line notation that obesity had been considered along with his other impairments. To the contrary, the hearing decision makes note of the various portions of the record concerning plaintiff's weight. In addition, the ALJ's conclusion is far from cryptic. He very explicitly concluded that plaintiff had failed to meet his burden of proof with respect to obesity.

The court agrees with the ALJ's conclusion. A multiple impairments analysis is not required where: (1) the record is silent as to the effects of obesity; and (2) the plaintiff does not present testimony or other evidence that obesity impaired the ability to work. See Burch, 400 F.3d at 682. These conditions are met in this case. While plaintiff points to records suggesting that obesity exacerbates his back problems, there is nothing in the record to suggest how obesity exacerbates plaintiff's other impairments. In other words, it is not clear from the record that plaintiff's obesity exacerbates his other impairments in a particular way, such as by impairing his movement, breathing, or cardiovascular functioning.[3] See Celaya, 332 F.3d at 1181 n.1 and 1182. Further, plaintiff himself never testified that obesity was a limiting factor, nor did he list obesity as a disabling condition in his initial application materials.

The court concludes that the ALJ did not err in his analysis of plaintiff's obesity. To the extent the ALJ considered obesity as part of a multiple impairments analysis, the ALJ exceeded his legal obligation.

**B.      Evaluation of Medical Opinions**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual,

---

[3] A February 2005 finding that ". . . [r]ange of motion of the lumbar spine was decreased, possibly due to morbid obesity" is speculative at best (emphasis added).

than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

/ / /

/ / /

As to Dr. Gabbay, the ALJ noted: "At the request of the claimant, Robert Gabbay, D.O., completed a medical source statement on May 18, 2005, which assessed significant functional limitations." This source statement is contained in the certified administrative record ("CAR") at pages 341 through 344. Dr. Gabbay indicated a primary diagnosis of low back pain and a secondary diagnosis of neck pain. He stated that the basis for these diagnoses was a lumbar spine MRI. Dr. Gabbay also stated that the "onset of diagnosis" was June 8, 1998, and noted "MVA while at work."[4] As to functional limitations, Dr. Gabbay opined that plaintiff could only stand and/or walk for 15 minutes at a time for up to 60 minutes in an eight-hour workday. As to sitting, he opined that plaintiff could only sit for 20 to 30 minutes as a time without interruption. He also concluded that plaintiff would have difficulty performing work activities while sitting at a desk and that plaintiff could not maintain prolonged posturing of the neck. Dr. Gabbay opined that plaintiff could never bend, climb, balance, stoop, crouch, crawl, or kneel due to back and neck pain. He stated that plaintiff could occasionally lift up to five pounds, but could never lift any greater weight. Dr. Gabbay concluded that plaintiff could occasionally reach and handle, and frequently engage in fingering activities. Dr. Gabbay opined that plaintiff's conditions caused environmental restrictions with respect to heights, moving machinery, temperature extremes, and chemicals, and that plaintiff needed to lie down frequently. Finally, the doctor stated that plaintiff's condition had worsened over the previous two years and that plaintiff uses two canes to walk.

As to Dr. Forsythe, the ALJ summarized the record as follows:

> Kenneth Forsythe, M.D., saw the claimant for an initial consultation in October 2003, when the claimant's complain[t]s were of neck, back, and lower extremity pain. His history was unremarkable for any surgeries. He was being treated for weight management with Wellbutrin and Xenical due to a 100 pound weight gain in the last five years. The claimant was diagnosed with low back pain with MRI-documented herniated intervertebral disc. He was referred for deep water physical therapy.

---

[4] The court assumes "MVA" means "motor vehicle accident."

Follow-up in February 2004 indicated the claimant had complaints of chronic low back pain, neck pain, and numbness in the right hand. Examination revealed his gait about the examination room was grossly normal. He could walk on his heels and tiptoes with minimal difficulty. He could squat approximately half way and rise, limited by pain in the low back area. There was tightness in the lumbar spine, but no trigger points of the lumbar area. There was grade 2-3/4 tenderness bilaterally. The neurological examination of the lower extremities was unremarkable. The claimant was diagnosed with cervicalgia, low back pain with sciatica, and obesity. He was encouraged to lose weight. In March 2004, the claimant was diagnosed with low back pain with sciatica but without current neurological deficit, and morbid obesity. The claimant reported that he was doing 30 to 45 minutes five days a week in pool therapy. He was also walking with two canes rather than one, which had definitely improved his walking abilities. In April 2004, Doctor Forsythe recommended that the claimant undergo epidural steroid injections, which had offered him relief in the past. In August 2004, the claimant was diagnosed with low back pain with sciatica and degenerated, as well as herniated, intervertebral discs, with resurgence of pain on conservative management. He opined that there was no surgical option for the claimant, and that the best approach would be to try a pain management program.

The claimant was seen for a lesion on his left leg; a punch biopsy in June 2004 demonstrated evidence of subacute dermatitis, dermal fibrosis, and hemosiderin pigment. The claimant was seen for prescription refills of Xeenical and Wellbutrin, and asthma medications. In an undated statement, Doctor Forsyth opined that the claimant is unable to attend jury duty, as he cannot sit for periods longer than 20 minutes.

The court concludes that this summary is consistent with the evidence contained in the record, and plaintiff does not argue otherwise. Plaintiff does, however, offer the following additional summary of Dr. Forsythe's April 2004 evaluation:

> On April 6, 2004, Dr. Forsythe observed:
>
>> Mr. Hill . . . is in some obvious distress as he tries to find a position of comfort in the examination chair. . . . His weight is 268 pounds. This is a six pound weight loss since his previous exam in Mid-March. . . . He is able to walk with two canes only with difficulty. Flexion of the trunk is only accomplished to approximately 20-25 degrees before he is limited by pain in the low back area. He is able to squat only approximately one-quarter and is limited by low back pain. Other exam is limited by the patient's acute pain.

This summary is consistent with the record at CAR 179.

Concerning both doctors' opinions, the ALJ stated:

> I cannot credit the functional limitations assessed by Doctor Gabbay cited in his medical source statement of May 18, 2005, or the statement of Doctor Forsythe (undated), which indicated that the claimant is limited to sitting only twenty minutes at a time. These examiners did not provide an explanation or basis or finding to support these extreme limitations and they appear to be repeating the claimant's complaints, as there are no clinical findings in their record or other evidence in the record to support such restrictions. They did not cite objective findings that relate to the functional limitations and restrictions assessed; and their findings appear to be based solely upon the claimant's recitation of his subjective complaints. Such forms were prepared at the claimant's request, which suggests that their findings were an accommodation in part by the physicians in an attempt to assist the claimant in his disability claim, rather than for treatment. Their minimal findings noted at the time of their evaluations are not consistent with the extreme limitations . . . assessed, nor are they consistent with the findings in other evidence of record. . . .

Plaintiff claims that the ALJ improperly dismissed the opinions of Drs. Gabbay and Forsythe. Specifically, he argues: "The ALJ utterly failed to provide the specific, legitimate reasons required . . . to justify rejecting the opinions of his treating physicians, Drs. Gabbay and Forsythe."

By arguing that the ALJ failed to give specific and legitimate reasons, plaintiff concedes that the limitations assessed by Drs. Gabbay and Forsythe are contradicted.[5] In this case, the reasons given by the ALJ for rejecting the undated 20-minute sitting limitation opined by Dr. Forsythe and all of the limitations opined by Dr. Gabbay in his May 18, 2005, assessment were: (1) the opinions were not supported by objective findings; and (2) the opinions were inconsistent with objective findings elsewhere in the record. The court finds that these are specific and legitimate reasons. See Magallanes, 881 F.2d at 751-55; Lester, 81 F.3d at 830-31; Meanel v. Apfel, 172 F.3d at 1113.

///

///

---

[5] For the ALJ to reject uncontradicted opinions of treating professionals, he would have to state clear and convincing reasons.

1    The question is whether these reasons are supported by substantial evidence in the record as a whole. As to Dr. Forsythe's undated statement that plaintiff could not sit for more than 20 minutes (CAR 309), the statement indicates that the opinion is based on plaintiff's pain symptoms. Specifically, Dr. Forsythe stated: "His pain gets worse with prolonged sitting, bending, and twisting." Dr. Forsythe does not, however, cite any objective clinical findings in support of this assessed sitting limitation. While Dr. Forsythe observed a decreased ability in trunk flexion and squatting in his April 6, 2004, assessment, he did not observe any limitations related to sitting. The court also notes that, in a March 12, 2004, pain questionnaire, plaintiff indicated that he could sit one hour at a time.

   As to the limitations assessed by Dr. Gabbay in his May 18, 2005, report, the only objective clinical finding cited in support of the assessed limitations is an MRI of the lumbar spine. In particular, there is no indication that the assessment was based on an examination performed by Dr. Gabbay. The report does not note any test results which would support the specific limitations assessed by the doctor. As the ALJ stated, it appears from the numerous references to pain that Dr. Gabbay's assessment is based almost entirely on plaintiff's subjective complaints and not on any objective findings, other than the MRI. As such, Dr. Gabbay's assessment is minimally supported at best.

   Further, as the ALJ indicated, no other doctor – including doctors who also had an opportunity to review plaintiff's MRI scans – assessed plaintiff with the kinds of limitations assessed by Drs. Forsythe and Gabbay, and plaintiff does not argue otherwise. An agency doctor completed a residual functional capacity assessment on April 6, 2004 (CAR 154-61), and opined that plaintiff could sit for about 6 hours in an 8-hour day. The agency doctor also concluded that plaintiff could occasionally lift up to 20 pounds and frequently lift up to ten pounds. The doctor did not opine that plaintiff was precluded from all climbing, balancing, stooping, kneeling, crouching, and crawling, as Dr. Gabbay suggested. The agency doctor did not assess any manipulative, visual, communicative, or environmental limitations. Similarly, in a July 29, 2004,

residual functional capacity assessment (CAR 281-86), another agency doctor reached essentially the same conclusions as the other agency doctor.

Finally, plaintiff was examined by agency doctor Steven McIntire, M.D., on April 2, 2005 (CAR 300-08). Dr. McIntire performed a neurological and orthopedic examination which revealed the following:

> COORDINATION, STATION AND GAIT: The claimant walks with a somewhat stiff posture. There is not gross instability of gait. He exhibits a narrow base. He, however, exhibits some unsteadiness when performing a heel and toe walk and tandem. He is still able to complete a tandem. He does not have foot drop when walking on his heels and toes. Romberg is negative.
>
> ASSISTIVE DEVICE: The claimant uses two canes. The current examination does not point to the need for canes.

Dr. McIntire also performed a number of range-of-motions tests. The doctor summarized his impressions of these tests as follows:

> Objectively, the claimant has loss of range of motion of both the cervical and lumbar spine. There is slight flattening of the normal lumbar curvature. There is tenderness on palpation of the lumbar spine. The claimant has a positive straight leg raise on the left, as indicated. He does not, however, have motor or sensory deficits in a radicular pattern. There are not findings of a myelopathy.

In light of his clinical observations, Dr. McIntire assessed the following functional capacity:

> Given the above findings, the claimant would have significant functional limitations. He would be limited to two hours of walking or standing in an eight-hour day given the cervical and lumbar findings. Given the positive straight leg raise on the left, he would also be limited to not more than six hours of sitting in an eight-hour day. He should best work in a capacity where he could alternate sitting and standing. He should not attempt to lift or carry more than 10 pounds when upright. He would need to lift by bending at the knees and should avoid more than occasional stooping activities. He should not work in capacities that require fine balancing on his feet. The current examination does not suggest manipulative limitations.

Based on the foregoing, the court finds that the reasons given by the ALJ for rejecting the limitations assessed by Drs. Gabbay and Forsythe are supported by substantial evidence in the record as a whole.

### C. Plaintiff's Credibility

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

Concerning plaintiff's credibility, the ALJ summarized plaintiff's hearing testimony as follows:

> At the hearing, the claimant testified that he is unable to engage in substantial gainful activity due to severe back pain and neck pain. He has limited mobility in his neck and cannot keep his head in a sustained position for more than 20-30 minutes. He has difficulty using his hands in front of his body; his right hand goes numb and cramps. He also

> experiences pain in his hips and numbness and weakness in his left leg. He experiences muscle spasms in the low back and hips on a daily basis. He is unable to stand, walk, or sit for prolonged periods due to back pain. The claimant estimated that he can walk a half block with the use of two canes.
>
> Mr. Hill estimated that he can stand ten minutes with the use of two canes. He estimated that he could lift five to ten pounds maximum. With regard to activities of daily living, the claimant stated that he spends time at the computer and lies down most of the day. He fixes himself a sandwich, and then lies down. He microwaves simple meals and goes grocery shopping every two weeks. He drives short distances to his appointments, and his mother drives him for longer distances.

Plaintiff's summary of his testimony is consistent with the foregoing. The ALJ then provided the following analysis of plaintiff's credibility:

> The claimant's allegations of numbness in his hands and difficulty using his hands are not supported by the record as a whole. Examination of the right hand in August 2003 showed no evidence of atrophy. Tinel's was positive over the median nerve at the right wrist and to a lesser extent, the ulnar nerve at the right elbow. Phalen's was positive on the right. Deep tendon reflexes in the upper extremities were equal and symmetrical. Shoulder abduction strength, elbow flexion and extension strength, and wrist flexion and extension strength were all full at 5/5 bilaterally. Grip was good bilaterally. There was slight tenderness over the right greater trochanter. On September 22, 2003, Doctor Harrington diagnosed the claimant with lumboradicular syndrome; right greater trochanteric bursitis; cervical spondylosis, with no hard evidence of cervical root irritation. There is no evidence of ongoing treatment for hand pain, or any indication that the claimant's symptoms were deemed of sufficient severity to require diagnostic testing or referral to a specialist. In addition, Doctor McIntire noted that motor strength was 5/5 throughout the upper and lower extremities, and he noted no manipulative limitations.
>
> With regard to the claimant's allegations of disabling hip pain, the record shows that a right hip x-ray performed in August 2003 was normal. In addition, the consultative neurologist, Doctor McIntire, noted only mild discomfort on range of motion testing of the hips. . . .

The ALJ added:

> Evaluating the claimant's subjective complaints . . ., the undersigned concludes that the claimant is not limited by incapacitating pain, fatigue, or limitation from performing work at the sedentary exertional level. This conclusion is reached after reviewing the claimant's statements concerning his abilities, which include a range of activities that are incompatible with the presence of a disabling level of pain. Statements in the record indicate that the claimant drives, goes grocery shopping when necessary, and

> microwaves simple meals. He spends time in the steam room and spa at a health club. He performs light household chores and uses a computer. These activities do not support the degree of limitation or pain alleged by the claimant.
>
> There is also a lack of medical documentation of an impairment which would cause extreme pain or pain which would compromise the claimant's ability to perform work-related activities. The record as a whole does not reveal that the claimant is precluded from performing all regular, sustained work activity. The level of medication the claimant takes and his level of daily activities suggests that his pain is controlled sufficiently to enable him to perform work activity at the sedentary level. Additionally, the record does not document evidence of muscle atrophy, deconditioning, or muscle weakness. The claimant's treatment has been conservative, and as noted previously, Doctors Montesano, Aslie, and Forsythe concluded that there were no surgical options for the claimant. I find that the claimant's allegations of pain and limitation are not fully credible and not consistent with the medical record.

At the outset, the court concludes that the ALJ fulfilled his duty to identify the testimony deemed not credible and the evidence undermining the testimony. See Lester, 81 F.3d at 834. Plaintiff appears to assign error to the ALJ's credibility analysis because the evidence shows that plaintiff has severe impairments and that he also experiences pain. The question, however, is not whether plaintiff has severe impairments which cause pain – clearly he does – but whether his impairments result in <u>totally disabling</u> pain. In other words, the issue is whether the record supports plaintiff's assertion that, due to pain, he cannot perform even sedentary work.

The court finds that it does not. As discussed above in the context of the ALJ's analysis of the contradictory medical opinions concerning plaintiff's functional limitations, there is substantial evidence in the record as a whole to support the finding that plaintiff can perform sedentary work. Specifically, even though the doctors noted plaintiff's subjective complaints of pain, the doctors properly credited by the ALJ did not opine that plaintiff was limited by pain such that he could not perform at least sedentary exertional activities. For example, Dr. McIntire observed that plaintiff "does not exhibit guarding when seated" and "does not exhibit abnormalities of head or neck posture." These observations are not consistent with plaintiff's allegations of pain which would preclude <u>all</u> work activities. Finally, no doctor reported that

plaintiff was in acute distress which is contrary to what would be expected from a patient experiencing totally disabling constant pain.

For the foregoing reasons, the court concludes that the ALJ's credibility analysis is based on proper legal reasoning and is supported by substantial evidence in the record.

### D. Hypothetical Questions

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Plaintiff argues that the hypothetical question upon which the ALJ relied in this case did not reflect an accurate description of plaintiff's limitations because ". . . the ALJ did not have specific and legitimate reasons for rejecting the opinions of Drs. Gabbay and Forsythe, or for disbelieving Mr. Hill's testimony as to his limitations." Plaintiff's argument concerning the ALJ's hypothetical question is, therefore, derivative of his arguments addressed above regarding evaluation of the medical opinions and plaintiff's credibility. Because the court finds no error with respect to those issues, plaintiff's argument regarding hypothetical questions is unpersuasive.

/ / /

/ / /

/ / /

/ / /

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment is denied;

    2.    Defendant's cross-motion for summary judgment is granted; and

    3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED:  August 31, 2007.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE